**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
SAMUEL D. FELLS,

                          Plaintiff,

          - against -

DENNIS BRESLIN,

                         Defendant.
--------------------------------------------------------X

                                      **REPORT AND**
                                      **RECOMMENDATION**
                                      CV 04-3849 (ADS) (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

       Petitioner Samuel D. Fells ("Fells"), proceeding *pro se*, seeks a writ of *habeas corpus*
pursuant to 28 U.S.C. § 2254 on the ground that the Parole Board (the "Board") improperly
failed to consider his assertion of the existence of factual inaccuracies in his presentence
investigation report ("PSIR") and thereby violated his right to due process when it rejected his
request for parole. *See* Docket Entry ("DE") 1 ("Petition") at 5. This is the second time I have
reviewed Fells' petition. When I first reviewed it in 2005, I concluded that it was a second or
successive petition, and therefore recommended that it be transferred to the United States Court
of Appeals for the Second Circuit pursuant to 28 U.S.C. § 1631. DE 15. The Honorable Arthur
D. Spatt, United States District Judge, adopted that recommendation and transferred the petition.
DE 18. On November 7, 2005 the Court of Appeals determined that the petition was not a
second or successive petition and remanded the petition to this court with instructions to accept it
for filing. DE 19. On April 13, 2006, Judge Spatt again referred the matter to me for a Report
and Recommendation as to whether the petition should be granted. DE 26. I now make that
report and respectfully recommend, for the reasons explained below, that Fells' petition be
denied on procedural and substantive grounds.

I.    Background

    A.    Procedural History

On May 21, 1982, following a jury trial in Nassau County Court, Fells was convicted on charges of second-degree murder and first-degree robbery and sentenced to an indeterminate term of 20 years to life in prison.  *See* Petition ¶¶ 2-4; DE 25 (Declaration [of Malancha Chanda] In Opposition To Petition For A Writ Of Habeas Corpus, attached Affidavit in Support of Motion to Dismiss ("Chanda Dec.") ¶ 1.   The Appellate Division, Second Department, of the New York State Supreme Court affirmed the conviction and sentence, and the New York Court of Appeals denied leave to appeal.  *See* Petition ¶ 9; *People v. Fells*, 121 A.D.2d 394 (N.Y. App. Div. 1986), *lv. to appeal denied*, 69 N.Y.2d 1003 (1987) (table).  Fells later filed a motion in Nassau County Court to vacate the judgment against him; that motion was denied on April 17, 1990.  *See* Petition ¶ 11.  On October 1, 1991 Fells filed a petition for a writ of *habeas corpus* raising, in addition to the issues he raised on direct appeal, that he was incompetent to stand trial and was denied effective assistance of counsel.  *See* Petition ¶ 11.  Judge Spatt denied the petition on July 8, 1993 and the circuit court affirmed the denial on April 28, 1994.  *See* Petition ¶ 11; *see Fells v. Walker*, docket no. CV 91-4103 (ADS), DE 1, DE 20, DE 33; *Fells v. Walker*, 23 F.3d 397 (2d Cir. 1994) (table).

Fells first filed the instant petition for *habeas corpus* on September 7, 2004, seeking to be released from confinement, "or in the alternative [for the court to] order his resentencing and that all inaccurate information in the petitioner's [PSIR] to be corrected."  *See* DE 1; *see also* DE 9 (including Notice Of Motion For A Writ of Habeas Corpus ("Notice"); Affidavit [of Samuel D. Fells] In Support Of Motion ("Fells Aff."); and Memorandum Of Law ("Memo.")).  Respondent Dennis Breslin ("Breslin") moved to dismiss the petition on the ground that the court lacked

jurisdiction to grant relief as a result of Fells' failure to secure authorization to file the petition from the Court of Appeals as required by 28 U.S.C. § 2244(b)(3)(A). DE 6. On January 25, 2005 Judge Spatt referred the matter to me for a Report and Recommendation. DE 12. On June 6, 2005 I reported that the petition at issue was a successive petition because the petition Fells previously filed in 1991 had been decided on the merits and because there was no dispute between the parties that the decision to deny that petition was affirmed on appeal. *See* DE 15 at 3. Therefore, I found that the court lacked jurisdiction to address the merits of Breslin's motion and recommended that "in the interest of justice the petition itself be transferred to the United States Court of Appeals for the Second Circuit pursuant to 28 U.S.C. § 1631 for a determination of whether to grant petitioner Fells leave to file a second successive petition." *Id.*

The Court of Appeals subsequently transferred the petition back to the district court with instructions to accept the petition for filing on the following basis:

> The petitioner challenges allegedly inaccurate and false information contained in a pre-sentence investigation report prepared by the Probation Department prior to sentencing, which "cause[d]" the Parole Board to decide not to release the petitioner from state custody in 2000 or sometime thereafter. Because the claim, liberally construed, challenges the execution of the petitioner's sentence by the Parole Board and because the claim had not arisen by 1991, when the petitioner filed his first habeas petition, the instant habeas petition is not "second or successive."

DE 19. The petition was so accepted and on March 31, 2006, Breslin filed a further response asserting that the petition should be dismissed. *See* DE 24 (Respondent's Memorandum Of Law In Opposition To Petition For A Writ Of Habeas Corpus) ("Opp."). On April 13, 2006, Judge Spatt again referred the matter to me for a Report and Recommendation as to whether the petition should be dismissed. *See* DE 26. Following that referral, Fells submitted additional papers in support of his petition, including a reply to Breslin's memorandum, and several

documentary exhibits.  *See* DE 27 (letter enclosing Reply To Respondent's Opposition To Petition For A Writ Of Habeas Corpus ("Reply")); DE 28 (letter enclosing documents).

B.    <u>Factual Background</u>

Fells contends that the Parole Board denied him relief in reliance on inaccurate information contained in his PSIR.  *See* Memo. at 2.  Fells complains about several specific errors.  First, Fells decries a discrepancy between the description of the crime in the PSIR ("the assailants at the door shot the victim before entering the house") and a statement at his sentencing that the "victim was not shot at the front door," but was shot *after* the assailants entered the house.  Fells Aff. ¶ 9.  Second in contrast to the portion of the PSIR that reported that Fells "stabbed the victim numerous times in his back, chest, and buttocks," Fells, apparently citing the testimony of the medical examiner, asserts that the victim was stabbed in the buttocks and that there was no indication that it was done while the victim was "lying on the ground."  *Id.* ¶ 16.  Finally, Fells disputes the assertion in the PSIR that he was interviewed by a presentence investigator; he notes that the log of his visitors discloses no such interview and claims that the presence of other errors in the PSIR – errors, including the misspelling of his mother's name and mistakes about his height, employment history, and education that "an in-personal [sic] interview would have easily clarified" – further demonstrate that he was not in fact interviewed.  *Id.* ¶¶ 10-15.

Fells asserts that his counsel brought these perceived inaccuracies to the attention of the sentencing judge at the proceeding on May 21, 1982, but that the judge refused to order corrections to the PSIR.  *See id.* ¶ 8.  Breslin puts a finer point on it:  purporting to quote the actual transcript of the proceeding, he notes that Fells' attorney stated that "although there were 'several minor inconsistencies in the [PSIR] and inaccuracies in the way the sequence of events

is related,' these inaccuracies were 'not substantial enough to request a correction.'"  Opp. at 2

(quoting Transcript of Sentencing at 3-4).[1]

On June 29, 2004, Fells appeared before three commissioners of the Parole Board at the

Arthur Kill Correctional Facility.  *See* Chanda Dec. Ex. C (Transcript of Parole Hearing) ("Tr.")

at 1.  After being told that he was on the record, Fells responded to a question from one of the

commissioners by confirming that he and his co-defendant had committed the crimes for which

he was convicted:  shooting and stabbing a male victim and assaulting and robbing the victim's

mother of her jewelry.  *Id* at 2.  A commissioner, who noted that the board's task was to "weigh"

Fells' crime against "what [he's] accomplished inside," acknowledged that Fells has "had some

accomplishments," including receiving no disciplinary tickets since his last appearance, working

as a "program aide in school," maintaining membership in the "inmate liaison committee,"

participating in "orientation," and acting as a "facilitator for the New York Theological

Seminary." *Id.* at 3.  The same commissioner also noted that Fells had expressed an intention to

further his education by taking additional courses, and Fells added more evidence of his

accomplishments by noting that he had completed an anti-violence program.  *Id*. at 4.

After brief further colloquy, a commissioner gave Fells the opportunity make a statement

to the Board "prior to [its] deliberation." *Id*. at 5.  The ensuing colloquy included the following:

Q [Commissioner].     Anything else, Mr. Fells?

A [Fells].                     The second thing is that because I was speaking about the
                              presentence report, and I see a lot of credence goes to the
                              presentence report.  I also have my sentencing minutes
                              where my lawyer spoke to the judge and explained to him

---

[1]  The sentencing transcript was not submitted by either party in this case.  As there is no
significant dispute regarding its content, I see no need to delay my report further by requiring its
submission.

the inconsistencies and inaccuracies witness [sic] the presentence report.  I want to share that with you.

Q.                           Leave that with us.  We'll make a copy and get the original back to you, and we'll take a look at that as well.

A.                           This is the only copy.

Q.                           We'll make a copy for you.  We'll keep a copy and you can keep the original.  We'll make sure this gets back to you, Mr. Fells.

A.                           Thank you.

Q.                           Commissioner Rodriguez, anything?

[Commissioner]:     No, thank you.

Q.                           Commissioner Tappan?

[Commissioner]:     Nothing further.

Q.                           Thanks for coming in.  You will get our decision in writing in a couple of days.

A.                           Thank you.

*Id.* at 6-7.

Immediately upon the conclusion of that colloquy, Fells left the room.  If there was any discussion among the members of the panel at that point, or if the commissioners made a copy or in any way perused the sentencing minutes that Fells provided them, the transcript does not reveal it.  I note, moreover, that the transcript contains no indication that the commissioners had any discussion off the record.  *See id.* 7-8.  Instead, as far as the transcript indicates, as soon as Fells left the room, one of the commissioners immediately announced the panel's decision, without so much as a confirming word from his colleagues:

<blockquote>

| | |
|---|---|
| [Commissioner]: | Parole denied.  Hold 24 months, 8-2006. |
| | After review of the record and interview, the panel has determined that discretionary release is contrary to the best interests of the community. |
| | This decision is based on the following factors [sic]:  Your [sic] instant offense, murder second, involved you in shooting and stabbing your victim to death during a robbery. |
| | The panel notes your satisfactory institutional record, however, all factors considered you're not a suitable candidate for release at this time. |
| | Guidelines are unspecified, offense involved weapon usage, caused death of victim. |

</blockquote>

*Id*. at 8.  Following that statement by one commissioner, the transcript includes the notation "(Commissioners concur)" but does not reveal how such concurrence was expressed.  *Id.*

Six days later, the Parole Board issued a written decision denying Fells parole and setting his next appearance before the Board for August 2006.  That document repeated almost verbatim the words spoken by the commissioner on June 29, 2004, after Fells left the hearing room.  As with the oral statement, the written decision used the plural form in referring to "factors" that the Board considered, but specified only a single factor – the criminal conduct supporting Fells' original conviction – that formed the basis of its decision.  *See* Chanda Dec. Ex. D ("Decision").

On July 13, 2004, Fells filed an administrative appeal with the Appeals Unit of the New York State Division of Parole (the "Division") alleging that the Board's denial of parole was arbitrary and capricious and therefore a violation of his due process rights under the "federal and state constitutions."  *See id*. Ex. E (notice of appeal); *see also id.* Ex. F (Memorandum of Law). Among other perceived errors, Fells claimed that he was "denied the right to be heard when he attempted to correct the erroneous information in [his] pre-sentence report against the facts in his

sentence minutes [sic]." *Id.* Ex. F at 10. Fells argued that he "tried to explain the inaccuracies in the [PSIR] and was denied that right." *Id.* As a result, he claims, the Board's decision was "based upon mere conjecture." *Id*. at 14.

On January 24, 2005, the Division affirmed the Board's decision to deny parole. *See id.* Ex. G (Administrative Appeal Decision Notice). The Division stated that "[a] review of the record indicates the Board was well aware of, and considered, all relevant information regarding appellant's release." *See id.* Ex. G (Statement of Appeals Unit Findings and Recommendation) at 1. Regarding Fells' claim that he was denied an opportunity to raise the presence of inaccuracies in his presentence report, the Division, citing New York case law, stated that "the Board is not authorized to correct information therein and is entitled to rely on the information contained in the report" and that "[w]here there is not a convincing showing that the Board relied upon erroneous information, there is no cause to disturb the decision." *Id.* However, the Division noted that Fells submitted the sentencing transcript to the Board "which the Board did review and place on the record." *Id.* Moreover, the Division stated that "the record of the interview shows it consisted of a colloquy during which the appellant could provide whatever information he desired in response to the Commissioner's questions. As such, the conduct of the interview was proper, and the argument is without merit." *Id.*

Fells subsequently filed an Article 78 petition in the New York State Supreme Court, Albany County, seeking an order vacating the Parole Board's decision to deny parole, which the court dismissed on November 9, 2005. *See id.* Ex. H. With respect to the claim Fells now pursues in the instant litigation, the court found that Fells' "due process rights were not violated by the fact that he was not allowed to discuss the sentencing minutes and indicated since the Board permitted him the opportunity to leave the minutes and indicated that they would review

8

them." *Id.* There is nothing in the record that suggests Fells sought leave to appeal this decision, and Breslin states that he confirmed with the attorney who represented Fells in this proceeding that no such appeal was sought. *See* Opp. at 6 n.6.

II.    Discussion

    A.    The Applicable Legal Standard

A federal court has the authority to grant a writ of *habeas corpus* challenging the judgment of a state court if the adjudication in the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A result is "contrary to" Supreme Court decisions if "the state court reaches a result opposite to the one reached by the Supreme Court on a 'materially indistinguishable' set of facts." *Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). An "unreasonable application" of Supreme Court law "occurs if the state court identifies the correct rule of law but applies that principle to the facts of the petitioner's case in an unreasonable way." *Id*. (citing *Williams*, 529 U.S. at 413). Findings of fact by the state court are "presumed to be correct" and it is the petitioner's burden to prove by a preponderance of the evidence violations of federal law. 28 U.S.C. § 2254(e)(1); *see also Jones v. Facco*, 126 F.3d 408, 415 (2d Cir. 1997). Moreover, it is well settled that when a petitioner challenges the "duration of his physical imprisonment," as Fells does in challenging the Parole Board's decision, "his sole federal remedy is a writ of habeas corpus" and the analysis applies to those proceedings the same as it would when challenging a conviction. *Abdul-Hakeem v. Koehler*, 910 F.2d 66, 69 (2d Cir. 1990) (quoting *Preiser v. Rodgriquez*, 411 U.S. 475, 500 (1973)); *see, e.g.*, *Bressette v. New York State Division of Parole*, 2 F. Supp.2d 383, 386-87 (W.D.N.Y. 1998).

B.     <u>The Petition Is Procedurally Barred</u>

Breslin argues that Fells' has not "exhausted" his due process claim and therefore his petition should be denied on procedural grounds.  I agree.  Before a federal court can reach the merits of a petition for *habeas corpus*, a state prisoner "ordinarily must first exhaust available state remedies."  *Daye v. Attorney General of State of New York*, 696 F.2d 186, 190 (2d Cir. 1982).  More specifically, the exhaustion requirement applies "to cases in which a prisoner challenges the validity of administrative action internal to the prison system that affects the fact or length of the prisoner's confinement."  *Jenkins v. Haubert*, 179 F.3d 19, 22 (2d Cir. 1999) (citing *Preiser,* 411 U.S. at 491-92).  "To exhaust a denial of parole under New York law, the inmate must first file an administrative appeal with the Division of Parole's Appeal Unit" and upon its denial "he must seek relief in state court pursuant to Article 78."  *Nieves v. Thomas,* 2006 U.S. Dist. LEXIS 4295, at *4 (S.D.N.Y. Jan. 30, 2006) (quoting *Desire v. New York State Division of Parole*, 2001 U.S. Dist. LEXIS 13784, at *6 (S.D.N.Y. Aug. 22, 2001)).  Should the Article 78 petition be denied, "a petitioner must appeal that denial to the highest state court from which a decision could be rendered."  *Id.*  Failing to exhaust in this manner may be excused if "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(B)(i)-(ii).

As noted above, Fells did not file leave to appeal the denial of his Article 78 petition to any higher state court, nor did Fells argue that he should be excused from seeking such an appeal pursuant to 28 U.S.C. § 2254(b)(1)(B)(i) or (ii).  As such, I find that Fells failed to exhaust his claim and therefore recommend that his petition be denied for failure to exhaust the available state remedies.

C. <u>Fells Was Not Denied Due Process In Connection With His Complaint About Errors In The PSIR</u>

"An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the [petitioner] to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).  Fells claims that the Parole Board violated his right to due process by not allowing him to discuss the inaccuracies he believed were included in the PSIR and by making the decision to deny him parole on the basis of such erroneous information. As explained below, I conclude that there is no merit to that substantive claim, and therefore recommend that the court invoke the provision quoted above to deny the petition on the merits notwithstanding the procedural defect.

Because "[t]he New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release," a petitioner has "no liberty interest in parole, and the protections of the Due Process Clause are inapplicable." *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001); *see also* N.Y. Exec. Law § 259-i.  Parole commissioners are given discretion to consider the "circumstances of each individual case" and petitioners' due process rights are "limited to not being denied parole for arbitrary or impermissible reasons." *Boddie v. New York State Division of Parole*, 285 F. Supp.2d 421, 428 (S.D.N.Y. 2003) (quoting *Brown v. Thomas*, 2003 WL 941940, at *1 (S.D.N.Y. Mar. 10, 2003)); *see also Salahuddin v. Unger*, 2005 WL 2122594, at *4 (E.D.N.Y. Sept. 2, 2005).

The procedures and conduct of the Parole Board are governed by New York Executive Law § 259-i which reads in relevant part as follows:

> Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not

11

incompatible with the welfare of society and will not so deprecate the seriousness
of his crime as to undermine respect for law.  In making the parole release
decision, the guidelines ... shall require that the following be considered: (i) the
institutional record including program goals and accomplishments, academic
achievements, vocational education, training or work assignments, therapy and
interpersonal relationships with staff and inmates; (ii) performance, if any, as a
participant in a temporary release program; (iii) release plans including
community resources, employment, education and training and support services
available to the inmate ....

N.Y. Exec. Law § 259-i(2)(c)(A) (2004).  In addition, the statute directs the Board to consider

"the seriousness of the offense" and the inmate's "prior criminal record, including the nature and

pattern of the offenses" by incorporation of N.Y. Exec. Law § 259-i(1)(a) (2004).

I am satisfied that the Board's decision was not rendered arbitrary nor capricious by any

reliance on erroneous information in the PSIR.  The Board gave Fells an opportunity, of which

he took advantage, to add to the record of his parole hearing anything he wanted.  *See* Tr. at 5, 6.

The record plainly discloses that Fells raised his concern about the PSIR's perceived

inaccuracies.  Tr. at 6.  In doing so, Fells not only complained about the inaccuracies, he also

presented what was likely the best evidence available to dispel them:  the minutes of his

sentencing proceeding.  *See id*.

As far as I can determine from the record, the Board did not read those minutes, much

less consider them, before making its decision.  *See id*. at 7-8.  However, the Board's failure to

consider the minutes does not advance Fells' cause.  Even assuming that the portions of the PSIR

about which Fells complains were indeed erroneous, and that a review of the sentencing minutes

would reveal the errors, there in no evidence that the Board relied in any way on those

uncorrected errors.  Indeed, the record before me is to the contrary:  the specific fact about Fells'

crime that the Board cited in its decision is one that Fells explicitly admitted was correct at his

parole hearing.  *Compare* Decision ("This decision is based on the following factors [sic]:  Your

instant offense ... involved you in concert, shooting and stabbing your victim to death during a robbery.") *with* Tr. at 2 (acknowledgment by Fells that, together with his codefendant, he "shot and stabbed the male victim to death during a robbery").  There is accordingly nothing about the Board's decision that suggests any possibility that the outcome would have been different if the Board had been persuaded of Fells' view of such matters as whether the victim was shot at the door of his home or inside of it, whether the victim was stabbed only in the buttocks or also in his back and chest, or whether the PSIR was prepared on the basis of an investigator's interview of Fells.  *See* Fells Aff. ¶¶ 10-15.

Finally, even assuming that the Board did in fact rely on erroneous information in the PSIR (which it is entitled to do, *see Boddie*, 285 F. Supp.2d at 424, 429), I cannot say that any such errors were of a kind that would produce an arbitrary or capricious decision.  *See Salahuddin,* 2005 WL 2122594, at \*6.  The Board had discretion to weigh the information before it, including the severity of the offense, as it deemed fit.  *See Manley v. Thomas*, 255 F. Supp.2d 263, 267 (S.D.N.Y. 2003).  Accordingly, I conclude that the Board's denial of parole was neither contrary to nor an unreasonable application of federal law.

      D.     <u>The Parole Board's Reliance On A Single, Unchanging Factor In Denying Parole May Have Denied Fells' Constitutional Rights, But Does Not Now Constitute A Sufficient Basis For Federal Relief</u>

If the law today were the same as it was when Fells filed his petition, I would say no more and rest on the preceding analysis as a basis for recommending that the court deny the writ.  But the advent within the past three weeks of two separate cases involving the way in which the Parole Board purports to exercise its broad discretion prompts additional consideration.  *See Coaxum v. New York State Board of Parole*, No. 2470/2005, N.Y.L.J., Aug. 7, 2006 at 25, col. 1 (Sup. Ct. Bx. County July 26, 2006); *Graziano v. Pataki*, 2006 WL 2023082 (S.D.N.Y. July 17,

2006).  As explained below, the recent decisions, viewed against the circumstances of this case, indicate that Fells may well have a claim that he was denied his right to due process and other constitutional protections at the parole hearing – but not in the way he has claimed, and not in a way that is amenable – at this point – to being cured by means of a writ of *habeas corpus*.

The Parole Board unquestionably enjoys wide discretion in deciding whether to grant parole to an inmate.  As noted above, however, there is at least some minimal restraint on how the Board goes about exercising of that discretion; in particular, the statute does "require" that three matters, other than the circumstances of the inmate's criminal conduct, "be considered:" the inmate's institutional record; his performance, if any, in a temporary release program; and his release plans including the available resources to support the inmate in pursuing such plans.  N.Y. Exec. Law § 259-i(2)(c)(A) (2004).

There is no question in this case that the commissioners who interviewed Fells at his parole hearing at least *discussed* each of those items with him, however perfunctorily.[2]  The record is also clear that in both the oral decision made at the close of the hearing and its later written decision, the Board made an implicit assertion that it had "considered" all of those factors.  Nevertheless, the record also contains compelling evidence that the Board did not actually *consider* anything other than the unchanging facts of Fells' long-past criminal conduct –

---

[2]  The transcript reflects that the commissioners did little more than read from a report that apparently set forth summary information corresponding to each of the three categories of statutorily required consideration and elicit from Fells an acknowledgment that the information was correct.  *See* Tr. at 2-4.  To the extent the colloquy exceeded that bare minimum, it included a commissioner pointing out a perceived problem with Fells' post-release plan and an exchange in which a commissioner, after hearing Fells explain the various reasons he believed he had engaged in criminal conduct over two decades earlier, pointedly noted that not everyone with low self-esteem committed a crime – a point that Fells did not dispute in attempting, apparently unsuccessfully, to direct the commissioner's attention back to considering his efforts and achievements in post-conviction rehabilitation.  *See* Tr. at 4-6.

at least not in any sense that is consistent with the meaning of the word "consider."  *See Coaxum*, N.Y.L.J., Aug. 7, 2006 at 25, col. 3 ("Surely actual consideration of factors means more than acknowledging that evidence of them was before the Board.").

Specifically, the Commission made its decision immediately upon the close of its interview of Fells, apparently without the need for any discussion or even a glance at the evidence it assured Fells it would review.  *Compare* Tr. at 6 ("We'll make a copy [of the sentencing minutes, containing Fells' complaints about inaccuracies in the PSIR] ... and we'll take a look at that as well.") *with* Tr. at 7-8 (announcing decision immediately after concluding interview).  If the transcript does indeed accurately reflect the proceedings – and, of course, I acknowledge the possibility that it may not – it appears that the denial of relief was such a foregone conclusion that no discussion was needed for one commissioner to know what all would decide.  In such circumstances, the hearing appears to have been more a matter of show than of substance.

Moreover, the Board was quite explicit in explaining the basis for its decision:  "This decision is based on the following factors [sic]:  Your [sic] instant offense, murder second, involved you in shooting and stabbing your victim to death during a robbery."  Tr. at 8.[3]  Despite its use of the plural "factors," the statement plainly conveys that a single factor served as the sole basis for the denial of parole.

The suggestion that the Board based its decision on but a single, unchanging factor is not necessarily at odds with the language it used, in both the oral decision and the written one,

_____

[3]  That the commissioner who announced the decision referred to Fells in the second person when he was not actually present further suggests that he was merely following a script in rote manner (and forgetting to account for actual circumstances, such as the fact that the person he was purporting to address was not in the room) rather than engaging in an exercise of discretion.

immediately after identifying that factor. The commissioner who announced the decision stated, "The panel notes your satisfactory institutional record, however, all factors considered you're not a suitable candidate for release at this time." Tr. at 8; *see also* Chanda Dec. Ex. D (written decision). In light of the immediately preceding citation of Fells' crime as the sole factor on which the Board based its decision, neither the fact that the Board "note[d]" Fells' record nor its unexplained reference in the plural to "factors considered" gives any reason to think that the result of the hearing was anything other than the result of a predetermined policy decision to deny parole solely on the basis of the severity of Fells' crime.

To be sure, the argument could be made that the Board's use of language was merely imprecise, and masked a more nuanced decision that Fells' achievements in custody and his plans for release were simply outweighed, in the commissioners' view, by the severity of the conduct in which he had engaged almost a quarter-century earlier. But there is also precious little in the record that suggests any such nuance, and quite a bit that suggests, to the contrary, a reflexive focus on Fells' past crimes to the exclusion of all else. Moreover, I recognize that the Board was under no legal obligation to provide a detailed recitation of the factors upon which it relied. *See Rentz v. Herbert*, 206 A.D.2d 944 (N.Y. App. Div. 1994). But having the freedom to withhold explanation is not the same as immunity from scrutiny – the Board having chosen to explain itself, however tersely, it is appropriate to parse that explanation to determine whether it suggests a procedure that afforded due process to Fells or, instead, impermissibly denied him that right.

The Board's handling of Fells' request for parole is thus similar in important respects to another denial that the New York State Supreme Court recently set aside. In *Coaxum* the court ordered the Board to reconsider its denial of parole to an inmate who, like Fells, had committed a

16

violent crime in the early 1980s and had then gone on in the ensuing decades to make important rehabilitative progress while incarcerated.[4]  In doing so, the court discerned in established state law an important distinction between a process that gives due consideration to all relevant factors, regardless of the outcome, and one that merely recites that such factors exist:

> After considering all the factors relevant to the individual inmate, the Board then may accord greater or lesser weight or emphasis to different factors. The decisionmaking is a process of determining which factors outweigh others: a balancing process.  *Anthony v. New York State Div. of Parole*, 17 A.D.3d 301; *Kirkpatrick v. Travis*, 5 A.D.3d 385 (2d Dep't 2004); *Wright v. Travis*, 284 A.D.2d 544 (2d Dep't 2001); *Guerin v. New York State Div. of Parole*, 276 A.D.2d 899, 900 (3d Dep't 2000).  Here, however, the Board's decision reveals it accorded no weight and no emphasis whatsoever to any factor apart from the seriousness of petitioner's offense. *Friedgood v. New York State Bd. of Parole*, 22 A.D.3d at 951.  *See Anthony v. New York State Div. of Parole*, 17 A.D.3d 301; *Torres v. New York State Div. of Parole*, 300 A.D.2d 128, 129 (1st Dep't 2002); *Garcia v. New York State Div. of Parole*, 239 A.D.2d at 239; *Vasquez v. State of N.Y. Exec. Dept., Div. of Parole*, 20 A.D.3d at 669.

N.Y.L.J., Aug. 7, 2006 at 25, col. 3.

The legal issue before the court in *Coaxum* was not – as it would have to be here, for Fells to secure relief – whether the inmate had been denied any right guaranteed to her under the United States Constitution by virtue of the Board's reflexive denial of parole.  Instead, the court rested its decision on the theory that such a reflexive denial had effectively, and unlawfully,

---

[4]  While the cases share important similarities, they are by no means identical.  In both cases, the Board *appears* impermissibly to have based the denial of parole on a single factor.  The record supporting that conclusion, while compelling in both cases, was unquestionably stronger in *Coaxum*:

> By admitting that petitioner could not have done and could not in the future do anything more or differently to lend greater weight to the factors other than her offense and tip the Board's decision to a conclusion in her favor, the Board demonstrates that those considerations did not weigh to any degree in its decisionmaking: the Board balanced nothing.

N.Y.L.J., Aug. 7, 2006 at 25, col. 3.  The record of Fells' parole hearing reflects no comparable explicit acknowledgment.

effected "an unauthorized resentencing, substituting the Board's own opinion of the sentence warranted by petitioner's crime for the court's determination." N.Y.L.J., Aug. 7, 2006 at 25, col. 4. Whatever the merits of that reasoning under the law of New York – a matter as to which I plainly have no reason to pass – it is clear that the decision in *Coaxum* does not suggest a basis for granting federal *habeas* relief, despite its jarringly similar circumstances.

The decision in *Graziano*, however, strikes closer to home. The plaintiffs in that federal lawsuit, all of them convicted felons who have been denied parole, seek to pursue a class action alleging that the Governor of New York and his appointees to the Division have instituted an "unofficial policy of denying parole release to prisoners convicted of A-1 felony offenses, solely on the basis of the violent nature of such offenses and thus without proper consideration of any other relevant factor or statutorily mandated factor." 2006 WL 2023082 at, *1. The *Graziano* plaintiffs contend that the implementation of such tacit policy has denied them their respective rights to due process and to equal protection of the law, and has also violated their rights under the *ex post facto* Clause of Article I, Section 10, clause 1 of the federal Constitution. *Id*. at *2.[5]

---

[5] The plaintiffs in *Graziano* purport to represent a class

> comprised of all prisoners in the custody of the New York State Department of Correctional Services who: [1] were convicted of A-1 violent felony offenses; [2] have served the minimum terms of their indeterminate sentences and are therefore eligible for parole release; and [3] have had their most recent applications for parole release denied by the Parole Board solely because of the 'seriousness of the offense,' the "nature of the present offense," or words to that effect, and in some cases, their prior criminal history…. Nine out of the ten named Plaintiffs … also seek to represent a sub-class of prisoners who meet the same defining factors of the main class as set forth above, but who were also sentenced to *less* than the statutory maximum term of imprisonment-25 years to life-for their violent offenses.

*Id*. at *3. On the basis of the facts in the record before me, it appears that, like nine of the ten named plaintiffs in *Graziano*, Fells is a member of both the main putative class in that case and the putative sub-class.

The defendants in *Graziano*, relying on the broad discretion to make parole decisions, sought to dismiss the putative class action. The district court denied the motion. In doing so, it concluded as a matter of law that "there is an entitlement to a process of decision-making, which comports with the statutory guidelines of consideration to all relevant statutory factors." *Id*. at *7. More specifically, the court endorsed the viability of *each* of the plaintiffs' theories of constitutional law. With respect to the due process claim, the court held that "while there is no due process right to being *granted* parole, there is a due process right to have the decision made only in accordance with statutory criteria." *Id*. at *9 (emphasis in original). Likewise, with respect to the equal protection claim (grounded on an assertion that prisoners convicted of lesser crimes are not subjected to the same restrictive policy), the court held that

> the same distinction addressed *supra* in the due process analysis, between challenging the *outcome* of a parole decision and challenging the *process* of making a parole decision, applies to the equal protection analysis…. The violent nature of the offense may obviously be considered, but may not serve to make a denial a foregone conclusion, in contravention of the statutorily-prescribed process of consideration.

*Id*. at *10 (emphasis in original). Finally, in addressing the *ex post facto* claim, the court again refused to dismiss the plaintiffs' complaint, although it noted that that claim might be particularly difficult to establish in light of prior case law regarding the relationship between parole policies and the prohibition against retroactive increases in punishment. *See id*. at *11 (citing *Garner v. Jones*, 529 U.S. 244 (2000)).

In light of the circumstances, results, and analyses in both *Coaxum* and *Graziano*, I must consider the possibility, entirely consistent with the record before me, that Fells was denied parole in violation of his right not only to due process (the federal constitutional right he has invoked in his petition), but also in violation of his rights under other constitutional provisions.

19

Notwithstanding that very real possibility, I am constrained for two reasons to adhere to my recommendation that the court deny Fells the writ he seeks. First, any constitutional claim mirroring that of the plaintiffs in *Graziano* that Fells might bring with respect to the Board's decision to deny parole in 2004 has long since been forfeited. The exhaustion analysis above applies with equal strength to such a claim: the New York State Supreme Court, Albany County, made a decision, which Fells did not appeal, rejecting his contention that the Board "failed to consider positive factors such as [his] institutional accomplishments and release plans." Chanda Dec. Ex. H at 2 (Article 78 decision).

Second, it is not at all clear that even a procedurally proper *habeas* claim on such grounds could succeed on the merits. Although I respectfully disagree with the state court's determination that "the Board concluded that the seriousness of the instant offense outweighed any positive features in [Fells'] record," *id*., a federal court considering a petition for *habeas corpus* would normally be constrained to defer to that determination. *See*, *e.g.*, *Dallio v. Spitzer*, 343 F.3d 553, 559 (2d Cir. 2003) (state court decisions on the merits are entitled to deference; citing cases); *Salahuddin*, 2005 WL 2122594, at *3. In light of the procedural defect, I need not and do not decide whether the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" 28 U.S.C. § 2254(d)(1), (2), but I note that each standard is a formidable hurdle that Fells would have to clear before securing relief from a federal court. In that regard, I also note that neither *Coaxum* nor *Graziano* purported to rest its outcome on any determination by the United States Supreme Court, although it is

likewise apparent that neither court had reason to make such a precise inquiry, as neither was considering a petition for a writ of *habeas corpus*.

In concluding that Fells does not now have a claim for relief on the basis of the possibility that the Parole Board did not actually consider, as it was required to do, matters beyond the circumstances of his earlier criminal conduct, I do not intend to suggest that Fells could *never* succeed in pursuing such a claim. In that regard, I note that, pursuant to the terms of the decision denying his last request for parole, Fells is eligible for a new parole hearing as early as this month. If Fells is again denied parole in circumstances similar to those in this case, he will have a renewed opportunity to raise a claim that he was denied rights guaranteed to him under the federal Constitution.

In light of the rationale for the remand of the instant petition to this court following my earlier recommendation of a transfer – namely, that a constitutional claim predicated on the denial of parole did not arise, for purposes of the *habeas* statute, by the time Fells filed an earlier *habeas* petition – any complaint that Fells might raise about the denial of due process or other constitutional rights at that *next* parole hearing will be susceptible to review on a new petition for a writ of habeas corpus (if not vindicated through the exhaustive pursuit of available procedures for review under state law). In short, my view that Fells should not be granted relief now, and my analysis as to why recent case law does not alter that recommendation, should not be mistaken for a suggestion of how any later constitutional claim that Fells may have occasion to make should be decided. If the past is prologue, that will likely be a question for another day.

III.    Recommendation

For the reasons set forth above, I respectfully recommend that the court deny Fells' petition for a writ of *habeas corpus* on the procedural ground that Fells did not exhaust available

state remedies, and also on the merits because the purported existence of errors in the presentence investigation report did not cause the Parole Board to deny Fells his right to due process.

IV.     Objections

Counsel for respondent is directed to serve a copy of this Report and Recommendation on Fells by certified mail, and to file proof of service with the court by August 11, 2006. Any objection to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 10 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Brooklyn, New York
        August 7, 2006

                                                        /s/ James Orenstein
                                                        JAMES ORENSTEIN
                                                        U.S. Magistrate Judge